of course mr. you say it luscious is that correct okay like this okay you're going first and then on the respondent I guess mr. White's going first and then mr. Croson is that correct I don't hear mr. Croson he's on the phone but I'm not sure yes your honor that's correct okay very well okay all right so mr. Alexis would you like to proceed please your sound is down quite a bit can you turn up the volume a little bit so yes so maybe let's just appearing by half of I could please reserve two minutes of my time okay we'll try to watch the clock as the panel doubtless appreciates there are very significant public policy ramifications to this action a affirmance of the lower court decision would effectively be a license to the subjects of federal investigations to terrorism via litigation against the informants and witnesses in a federal prosecution that is fundamentally what the VWPA sought to curtail and it's simply inconsistent with the VWPA to reach the outcome that the that the district court reached now there are two ways of attacking it and that's even without getting to the sham litigation exception now before before getting to the constitutional issues I'll just note that appellees respectfully request the court reach the constitutional issues even though it's extremely simple to to to an appellee sorry an appellant's view to it to reverse this act this outcome simply based on the misapplication of the sham litigation exception because the district court effectively flipped the serial litigation exception on its head the premise of the serial litigation exception is that when you have a serial wave of suits and some of them have very big red flags that allow scrutiny into all the other successful suits what the district court here was did here was the precise opposite the district court said if you've obtained the success of the occasional success we will not look at those other cases with the red flags so in appellant's view the district court flipped the serial suit exception on its head and reversal is is appropriate on those grounds alone however we respectfully request reaching the the constitutional issues because in appellant's view we don't want to be limited in the lower court to the confines of the of the serial litigation exception and so from a concert from the weather from a constitutional standpoint or from a nowhere Pennington standpoint ours our position is fundamentally that the petition clause is not implicated and the reason is Congress is simply balancing petition clause rights I am here today I have ten minutes on the being limited simply by the fact that I only have ten minutes to argue today that is simply a outcome that's you know that's simply a judgment that in order to provide everybody the equal opportunity to petition the government there needs to be some limitations Congress reasonably imposed a limitation on on petitions on serially suing a a witness and informant right to the extent that doing so would result in witness retaliation and intimidation I don't like to point out for your honors specific reference that in again er 78 we actually allege that witnesses were not showing up in the Santa Monica trial because they told mr. Pitt you know we love you and all but we don't want to be the next Harold Pitt and so when you have and it was also alleged in er 60 that there are other people engaging in litigation with mr. K which witnesses hang up the phone when they hear that who's involved so Congress reasonably counselor can I ask you a question you keep talking about Congress nor Pennington as a judicial doctrine is it not what are you reciting that comes from Congress that has anything to do with what we're talking about here well your honor nor Pennington is not you know it's not decided under article 3 or the courts inherent powers the it's premise in the the First Amendment right to petition right but but but the First Amendment is a constitutional right it was adopted long ago this is not a new congressional statute is it no your honor and with respect to the VW PA you know and this comes to I guess what you know that under the third step of this circuits nor Pennington jurisprudence looking at the third step it the congressional history is clear that section 1503 and one section 1505 it and even I'll also point out to a you know a point which was made in in sorry in the er 75 and 76 which is Congress the congressional history shows that Congress sought to eliminate the courts generous rule to one zero five zero five and of course we're saying well you need to show a act of retaliation or or intimidation that fits within the examples of the statute Congress said we want to get rid of that we just want to outlaw any act and this is a and again on the section 1514 this circuit has anti-suit injunctions right based on the premise that a lawsuit can be an act of intimidation that is the focus of the act and this once again comes to the language of 1515 I believe it's subsection C or might be subsection E that where Congress created the safe harbor for attorneys and it as noted in the briefing Congress specifically put in the statutory language twice that the statutory safe harbor is only for attorneys and that again reflects a congressional intent to affirmatively outlaw a a campaign of sponsoring and underwriting litigation against a a whistleblower and also let me ask you you're gonna run out of time just a very specific question about your corporate bribery allegations yes if you were granted leave to amend what what additional facts would you add to those out thank you your honor the additional act facts which would be alleged or would be referencing the additional allegations would reference mr. Carlson's deposition testimony in which he his litigation department knew about this relationship with third parties with a very checkered history why that's significant ties again to the what's the bribery there so that relates to the code the code of conduct of what's the bribery I know what bribery means I don't see it in that what you just said or in the complaint what's the bribery so our inference is that because the because the NYSE compliant code of conduct would preclude lower-level employees authorizing I'm still waiting to hear what the bribery is not to mention what private cause of action your client would have to be able to enforce that code of conduct but let's start with what's the bribery I still haven't seen any sign of bribery your honor our our allegation is that he acted that we have somebody who's who's used the corporate goodwill outside his scope of authorize he's got a judgment he's part of Motorola they've got a judgment he's got an opportunity to pursue the judgment where's the bribery your honor and this where's the bribery simple question any sign at all of money changing hands in an illicit way your honor under the corporate bribery statute it's about any exchange of value and appellants can see that it's an inference drawn on a lower ranking employee with limited authority authorizing the use of authorizing a joint relationship with a third party in a way that seems inconsistent with that particular agent signing of maybe in your judgment but you're not the one making that decision are you still don't see any sign of bribery and if that's the best you got okay that's the best we got your honor I yes absolutely okay you're almost out of time you want to save what there's left of your time or you want to continue with it no your so I believe mr. why you're going to take eight minutes if I understand correctly is that right yes your honor thank you please may it please the court I want to call the court's attention to inconsistency in the argument that counsels made in trying to explain why the Victim Witness Protection Act somehow clearly indicated that it was intended to burden petitioning rights counsel said that well from this you can see that Congress intended to burden serial lawsuits but that's not actually the appellant's arguments it would be one thing if they were arguing that you can't do sham lawsuits that fall into one of the sham exceptions in the nor pennington doctrine but the poets are arguing beyond that that even non sham lawsuits any lawsuits where they can't even plead one of the exceptions for the exception can be not only violation of the Victim Witness Protection Act but Rico and what you see as a result is a situation where palates are arguing that they have been injured for purposes of Rico by the fact that Motorola won a case in the state trial court winning a case has been turned into a Rico action not being able to plead any of the necessary facts for any of the sham litigation exceptions to nor pennington is being hand waved away on the idea that somehow the Victim Witness Protection Act clearly indicates an intent to do that but it simply doesn't counsel has cited no clear language in fact the statute has the exception that counsel referred to that is consistent with the nor pennington doctrines sham litigation exception in other words by saying this doesn't apply to legitimate representation of clients that's completely consistent with a nor pennington doctrine that has a sham litigation exception as the trial court properly found appellants simply did not plead facts sufficient to trigger it in light of their allegations in the First Amendment complaints and the judicially noticeable facts council I think misstated what the serial litigation requirement had excuse me what the pleading requirement for the serial litigation exception to nor pennington it's not the fact that the court below found that because one of the litigations was successful therefore it couldn't apply instead the court below correctly focused on what this court has said is the pleading requirements namely that the question isn't just whether any of the cases have merit but whether they're brought pursuant to a policy of starting legal proceedings without regard to the merits and for the purposes of injuring a market so that's from this court in uss posco industries they didn't allege that they didn't allege that Motorola has any sort of policy or practice of improper litigation they only allege that here in this case that these litigations were inappropriate and for incorrect motive I would also like to call the court's I don't think that ever addressed and that's the discrepancy about when they say Motorola and Mr. Carson Carlson obtained the knowledge that Mr. Pick was a witness of some sort and therefore got the intent to join retaliation against him although the First Amendment complaint says generally and without specifics that Motorola and Mr. Carlson learned this in 2014 later in the complaint as we show in our brief the appellants argue in great detail that it was during the trial of the state court case in 2019 that Motorola and Mr. Carlson learned that Mr. Pick had made complaints against Mr. K and that he was a victim and a witness and it was then and they plead this very specifically it was then that they gained the mens rea regarding why they were engaging this litigation well that's the case the Rico theory simply can't make sense because then the Nevada cases are before they knew that he was a victim or witness before they possibly could have had a common purpose to retaliate against a witness and indeed it shows that they started the Los Angeles case before knowing that even though those are inconsistent allegations the very specific and detailed one should control over the general generic one and that completely undermines their Rico claim about the shed council I know this might go outside the merits of the issues before us but are you able to shed any light on why Motorola is accepting litigation funding from this supposed stranger to their business I mean I was shocked that I guess mr. Carlson admitted that that is in fact what's going on I can't based on anything in the record your honor but to tie that question to the issue before you the question is if you plead on information and belief that mr. Carlson must have been bribed then under Twombly and Iqbal you have to show that there's not a just as good explanation that's plausible you have to show that this thing you're coming up with is the only plausible explanation and the notion that he was bribed is simply invoked invented out of thin air it's made up of nothing equally plausible interpretation is hey Motorola had this old judgment that it could get pursued for free without paying and without burdening the council is your answer to judge Watford's question that there is no evidence that Motorola was paid anything or that you know anything that was anything like what was alleged is that your answer your honor my answer is you're correct there is nothing in the record supporting yeah I think you're I think my colleague asked you just overall okay can you enlighten us did they get involved your honor if I understand your follow-up to judge Watford's question it is is there anything in the record explaining from Motorola why they accepted this help and the answer I believe is no not in the record before this court in this case but there's certainly nothing in the record and that's admitted by the information belief pleading for this purely invented idea that the only reason this could have happened was that individual was bribed and accepted bribes because there there are plenty of alternate plausible explanations including the one I just articulated which is that it was a free chance to pursue a judgment and get money and indeed as the record shows they succeeded in getting a judgment to get mr. Peck for fraudulent transfer now what for our purposes do we do we if there are two explanations one that shows cyanter and the other is just a perfectly innocent business reason I want to collect money on my judgment do we have some direction as to what we're to believe which were to pursue yes your honor the the cases we cite in our brief demonstrate that in that situation under Twombly and Iqbal the court need not accept an information and belief allegation when there are alternate explanations that is not adequate pleading that is not plausible pleading okay let me ask my colleagues whether either has questions additional questions for mr. white okay your honors I'll give the rest of my time to my colleague okay mr. Croson you have two we've all done it Peter Croson on behalf of the K defendants may it please the court your honors the district court found that the dismissal as to both defendants Motorola and the K defendants were based on the same ground so I will not go through the the positions that mr. white addressed however just generally with regard to the K defendants what appellants Rico claim is trying to do is is choke the funding as to Motorola's legitimate and admitted 1.2 million dollar judgment and that and why would mr. K be paying to for Motorola to pursue that is he a collection agency of some kind is he have a deal to get a recovery no your honor and that's not in the record what the the common purpose here with between mr. Kane and Motorola is is Motorola's legitimate judgment that they obtained that the case law doesn't really interest mr. K unless it's true that he's on a personal vendetta against mr. Peck which doesn't exactly put your client in a particularly good light your honor the under Nora Pennington the the case law is clear that funding of litigation is protected activity just like bringing litigation and case law is also clear that the court is not to look to the particular motive of the person funding the litigation just whether or not any of the exceptions apply our brief and the brief of co-counsel cites all of those cases funding is a legitimate protected activity oh so I want to be sure following on my colleagues question here you're telling us that under our case law that if mr. K just said you know I I hate pics guts and I have learned that Motorola has a judgment against him I look at the record and and I want to get that SOB he can go to Motorola and with real scienter with pure intention to harm him he can fund the litigation and it really doesn't matter so long as Motorola has a legitimate basis for its in your hypothetical your honor I'll answer that question obviously that's that's not the case here I'm sure but yes your honor if if the the case law cited on our brief discusses the the question is not to look at the motive behind it but whether or not any of the exceptions to Nora Pennington apply and the sham or the serial litigation type exceptions apply so your hypothetical your honor it certainly paints a picture of a very bad individual and that's not the situation here and that's not the circumstances presented on this appeal but yes the case law does not require looking at the motive of the person funding so so it doesn't matter what mr. K's motive was as long as there's no as long as it fits the exceptions in Nora Pennington it doesn't matter is that right yes your honor that's the law okay how many bites does it take to to exceed the the serial litigation problem many times can you take a whack at somebody well I think it it comes down to the threshold question first your honor as to whether or not the serial lawsuits have merit or not and in this case they have the appellant acknowledges in his brief that several of the serial litigations were successful so I don't really have an answer your question how many times can you knock someone with frivolous lawsuits that have no merit but the burden is on appellant to show that the in order to and that's that's not in the record now we have in this case of focused on the Motorola related material but as I understand it there were a lot of earlier unrelated lawsuits between pick and K or that was initiated by K should we take those others into account or will be limited by considering the Motorola cases I don't think the other cases should be taken into account your the RICO statute has a four-year statute of limitations and the majority overwhelming majority of those cases fall outside of that statute okay other questions by my colleagues or mr. Croson all right hearing none mr. Alexis I don't think you have much time but let's see what you've got here yeah I've got a minute and 10 seconds so go for it a central issue in the ring a central issue in the renewal of judgment in the lower court was mr. Carlson's declaration that no portion of the judgment had been assigned or alienated and that was that's a very key issue on the California assignment of judgments law whether a judgment can be renewed so that that's a very pertinent fact that you know in the renewal of judgment before there was any indication of this kind of relationship there was an affirmative declaration that mr. K is getting no fine that oh sorry that Motorola simply owns this judgment it hasn't been assigned in any sense or shape with respect to the merits of the successful you know if a federal informant knows that the moment they step up and speak to the government all of a sudden all their neighbors have unlimited funding to litigate all their property boundary disputes that's that will undermine the VW counsel with respect you now got over your time and I think we have I think we have the gist of your argument so we thank you we mentioned this case the case just argued is submitted and we wish you a good day
judges: CLIFTON, SMITH, WATFORD